UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER AYASH**,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**U.S. BUREAU OF PRISONS**,<br><br>　　　　Defendant. | Case No. 21-cv-2110 (CRC) |

## MEMORANDUM OPINION

　　The Federal Bureau of Prisons ("BOP") has long had statutory authority to allow inmates to serve the tail end of their sentences in home confinement in order to ease their reentry into the community. In the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Congress gave BOP expanded discretion, in appropriate cases, to release inmates to home confinement earlier in their sentences.

　　Plaintiff Christopher Ayash, a federal inmate incarcerated in Kentucky, claims in this suit that BOP has adopted a policy of denying home confinement under the CARES Act to inmates, like him, who were convicted of a crime of violence. This policy, Ayash contends, marks a shift from BOP's prior policy of releasing inmates to home confinement without regard to their offense. Ayash further claims that BOP violated the Administrative Procedure Act ("APA") by adopting this purported policy without engaging in notice-and-comment rulemaking.

　　BOP moves to dismiss Ayash's complaint for lack of jurisdiction, improper venue, and failure to state a claim. Asserting jurisdiction but concurring that Ayash fails to state a claim, the Court will grant the motion on that ground.

I.  **Background**

An overlapping series of statutes and BOP Program Statements govern the release of inmates to home confinement.[1]  First, 18 U.S.C. § 3624(c) gives BOP the authority to place a federal prisoner on home confinement for the last ten percent of his sentence, up to six months. It provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  The authority provided by this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

In 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act. Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act").  One of its provisions was designed to reduce the federal prison population during the pandemic by giving BOP discretion to place inmates on home confinement without regard to the time and percent limitation in § 3624(c).  In particular, the CARES Act provides that:

> [D]uring the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act § 12003(b)(2), 134 Stat. at 516; see Compl. ¶¶ 7–9.

---

[1] The Court may take judicial notice of BOP's program statements because they are referenced in the complaint and posted on BOP's website.  See Pharm. Rsch. & Manufacturers of Am. v. United States Dep't of Health & Hum. Servs., 43 F. Supp. 3d 28, 33 (D.D.C. 2014) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies."); Cannon v. District of Columbia, 717 F.3d 200, 205 n. 2 (D.C. Cir. 2013) (taking judicial notice of document posted on the District of Columbia's Retirement Board website).  BOP's Program Statements can be accessed at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query (last visited Aug. 15, 2022).

BOP implements § 3624(c)(2) through its Program Statement on Home Confinement, PS 7321.01, which states that "[a]ll inmates referred to community corrections are eligible to be considered for home confinement placement." PS 7321.01 at 3 (last revised Aug. 1, 2016). Under PS 7321.01, it is the responsibility of a BOP Community Corrections Manager ("CCM") to "ensure that each appropriate inmate is placed on home confinement as soon as otherwise eligible," and "[o]nly [a] CCM may approve home confinement." Id. at 3, 5.[2]

Separately, BOP Program Statement 5162.05, titled "Categorization of Offenses," lists offenses BOP considers to be crimes of violence as that term is used in various statutes. PS 5162.05 provides that, "as an exercise of discretion vested in the [BOP] Director . . . an inmate may be denied program benefits . . . such as early release pursuant to 18 U.S.C. § 3621(e) . . . if he or she was convicted of an offense listed in . . . this section." PS 5162.05 at 1, 8 (last revised Mar. 16, 2009).

Ayash claims that BOP, in using its expanded authority under the CARES Act, adopted a national policy or practice of denying home confinement to inmates convicted of a crime of violence listed in PS 5162.05. Compl. ¶ 9. As far as the Court is aware, however, BOP has not issued any program statement addressing expanded home confinement under the CARES Act.

BOP moves to dismiss Ayash's complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim.

---

[2] BOP's Program Statement on Community Corrections Centers ("CCCs") provides guidelines to BOP staff regarding placement criteria for inmates. See PS 7310.04 at 1 (last revised December 16, 1998). Among other things, eligibility for community corrections placement depends on an inmate's participation in certain BOP programs, the length of the inmate's sentence, and whether the inmate "poses a significant threat to the community," determined either by the offense of conviction or the inmate's behavioral history while incarcerated. Id. at 10–11.

## II. Legal Standards

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." Tex. Child.'s Hosp. v. Azar, 315 F. Supp. 3d 322, 329 (D.D.C. 2018) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). In making this determination, the court is not limited to "the allegations of the complaint," but "may consider such materials outside the pleadings as it deems appropriate." Transp. Trades Dep't, AFL-CIO v. Nat'l Mediation Bd., 530 F. Supp. 3d 64, 69 (D.D.C. 2021) (citations omitted).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). When ruling on a 12(b)(6) motion, a court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Daniels v. United States, 947 F. Supp. 2d 11, 17 (D.D.C. 2013) (quoting Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir.

2002) (Rule 12(b)(6)); Food & Water Watch, Inc. v. Vilsack, 808 F.3d 905, 913 (D.C. Cir. 2015) (Rule 12(b)(1)).

### III. Analysis

#### A. Jurisdiction and Venue

BOP contends that the Court lacks jurisdiction over Ayash's complaint because, at its core, the complaint amounts to a request to shorten the duration of Ayash's confinement, and a writ of habeas corpus is the exclusive remedy to achieve that result. Mot. to Dismiss at 6–7. Because Ayash is required to bring his case under habeas, BOP argues, neither jurisdiction nor venue lies in this Court, as "[a] federal court can only issue a writ of habeas corpus if (1) the petitioner is physically confined within the court's territorial jurisdiction, and (2) the court has personal jurisdiction over the petitioner's immediate custodian." Han v. Lynch, 223 F. Supp. 3d 95, 109 (D.D.C. 2016).

The Court disagrees. Federal prisoners are required to bring a habeas action if success on the merits of their claim would "necessarily imply the invalidity of confinement or shorten its duration." Davis v. U.S. Sent'g Comm'n, 716 F.3d 660, 666 (D.C. Cir. 2013). In Davis, the D.C. Circuit held that a federal prisoner could bring an equal protection challenge to the U.S. Sentencing Commission's calculation of the base offense levels for crimes involving crack cocaine without resorting to habeas. Id. at 662, 665. The Circuit reasoned that, even if the plaintiff succeeded, it "would do no more than allow him to seek a sentence reduction, which the district court retain[ed] the discretion to deny," and, as a result, success on the merits did not "necessarily imply the invalidity of confinement or shorten its duration." Id. at 666.

So too here. Ayash seeks a declaratory judgment that BOP violated the APA by failing to engage in notice-and-comment rulemaking before adopting a purportedly new home

confinement policy. Compl. ¶¶ 17–19. A declaratory judgment that BOP violated the APA would not definitively impact Ayash's sentence—indeed, Ayash does not allege that he requested, or was denied, home confinement. Even if he obtained the relief he seeks, BOP could adopt the same alleged policy through notice and comment, and would retain the discretion to deny Ayash home confinement in any event. See United States v. Orji, 486 F. Supp. 3d 398, 403 (D.D.C. 2020) ("[T]he CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic . . . [and] [t]he authority to place a prisoner on home confinement is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons.") (internal citations and quotation marks omitted). As in Davis, success on the merits would do no more than allow Ayash to seek home confinement placement. Davis, 716 F.3d at 666.[3] Therefore, Ayash does not have to proceed under habeas and the Court has jurisdiction to consider the merits of Ayash's claim.

B. APA Review

BOP next argues that Ayash fails to state a claim under the APA because the policy he challenges is exempt from the APA's notice-and-comment requirement. As a general matter, section 553 of the APA requires agencies "to afford notice of a proposed rulemaking and an opportunity for public comment prior to a rule's promulgation, amendment, modification, or

---

[3] BOP misplaces its reliance on Chatman-Bey v. Thornburgh, 864 F.2d 804 (D.C. Cir. 1988), Mot. Dismiss at 8. Chatman-Bey established that habeas covered all claims relating to a federal prisoner's term of detention, even where there was only a probabilistic chance for his release. See Chatman-Bey, 864 F.2d at 809; Davis, 716 F.3d at 663. However, the Davis court abandoned that rule in the wake of subsequent, contrary Supreme Court cases. Davis, 716 F.3d at 665 (noting that Razzoli v. Federal Bureau of Prisons, 230 F.3d 371 (D.C. Cir. 2000), which embodied the Chatman-Bey habeas-channeling rule, had been undermined by recent Supreme Court precedent). As noted above, Davis instead holds that federal prisoners need bring a habeas action only where the success on the merits would "necessarily imply the invalidity of confinement or shorten its duration." Davis, 716 F.3d at 665–66 (internal citation omitted).

repeal." Am. Hosp. Ass'n v. Bowen, 834 F.2d 1037, 1044 (D.C. Cir. 1987). However, the notice-and-comment requirements apply only to "legislative" rules; they do not apply to "to interpretative rules, general statements of policy, or rules of agency organization, practice or procedure." 5 U.S.C. § 553(b). Although sometimes difficult to apply in practice, the D.C. Circuit has identified two important factors to distinguish between legislative rules, on the one hand, and interpretive rules and general statements of policy, on the other: (1) "the actual legal effect (or lack thereof) of the agency action in question" and (2) the agency's own characterization of its action. Id. at 416. The first factor focuses on the effects of the agency action, "asking whether the agency has (1) imposed any rights and obligations, or (2) genuinely left the agency and its decisionmakers free to exercise discretion." Id. (cleaned up). The second factor "looks to the agency's expressed intentions, namely '(1) the [a]gency's own characterization of the action; (2) whether the action was published in the Federal Register or the Code of Federal Regulations; and (3) whether the action has binding effects on private parties or on the agency.'" Id. (quoting Wilderness Soc'y v. Norton, 434 F.3d 584, 595 (D.C. Cir. 2006)).

Although an agency cannot escape judicial review under the APA by merely labeling its action an "informal" guideline, Better Gov't Ass'n v. Department of State, 780 F.2d 86, 93 (D.C. Cir. 1986), courts have almost uniformly held that BOP's program statements are non-binding agency guidance that are not subject to the APA's notice-and-comment requirement. See, e.g., Reno v. Koray, 515 U.S. 50, 61 (1995) (describing BOP's program statement on credit for time served as an "internal agency guideline . . . that does not require notice and comment"); Phillips v. Hawk, No. 98-5513, 1999 WL 325487, at *1 (D.C. Cir. Apr. 14, 1999) (BOP's program statements 5100.06 and 5800.09, which relate to inmates' security level classifications, are "internal agency guidelines that are not subject to the rigors of the APA"); Rush v. Samuels, 82

7

F. Supp. 3d 470, 484 (D.D.C. 2015) ("[BOP] program statements are statements of internal policy that do not require notice and comment."); Driever v. United States, No. CV 19-1807 (TJK), 2020 WL 6135036, at *9 (D.D.C. Oct. 19, 2020) (BOP Program Statement 5200.04, which authorizes housing transgender prisoners according to their gender identity, was "not subject to the APA's rulemaking provisions because they [were] statements of internal policy"); Jordan v. Fed. Bureau of Prisons, No. CV 20-01478 (CKK), 2021 WL 4148549, at *9 (D.D.C. Sept. 13, 2021) ("BOP Program Statements are not commonly subject to the APA's rulemaking provisions and are instead considered statements of internal policy that [are] exempt from notice-and-comment.").

But this conclusion is not universal. When BOP has issued program statements that operated like binding rules, or contradicted regulations that were previously published in the Code of Federal Regulations, courts have faulted BOP for not engaging in notice-and-comment rulemaking. See Prows v. U.S. Dep't of Just., 704 F. Supp. 272 (D.D.C. 1988) (Bureau's inmate financial responsibility program statement that required inmates to pay at least 50% of their earnings should have been adopted through notice-and-comment rulemaking because it was applied in a "formula like" manner and had a substantial effect on prison employment decisions); Wiggins v. Wise, 951 F. Supp. 614, 619 (S.D.W. Va. 1996) (finding that an earlier version of Program Statement 5162.05, PS 5162.02, which imposed new restrictions upon those applying for early release and contradicted a Bureau of Prisons regulation was a legislative rule subject to notice and comment). But see Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999) (holding that a revised version of PS 5162.02 was an interpretive statement of position and not subject to rulemaking requirements).

Turning to the case at hand, the Court finds that Program Statement 7320.01 is a statement of internal policy that is exempt from the APA's notice-and-comment requirements.

The decision to place an inmate on home confinement under 18 U.S.C. § 3624(c)(2) is committed to BOP's discretion. See Orji, 486 F. Supp. 3d at 403; accord United States v. Pereira De Castro, No. CR 18-477-5, 2022 WL 2819139, at *2 (E.D. Pa. July 19, 2022) (the decision to refer a prisoner to home confinement "is within the sole discretion of the Director of the Bureau of Prisons"); see also Pelissero, 170 F.3d at 444 ("While eligibility for early release under § 3621(e)(2)(B) is open to all prisoners who meet the statutory requirements, the statute expressly vests the Bureau of Prisons with broad discretion to grant or deny sentence reductions to eligible prisoners."). Program Statement 7320.01 does not purport to narrow this discretion or create any enforceable legal right or obligation. To the contrary, it appears to "genuinely [leave] the agency and its decisionmakers free to exercise discretion." Sec. Indus. & Fin. Markets Ass'n, 67 F. Supp. 3d at 416. The program statement purports to describe "policy and procedures for referral and placement of pre-release inmates in Community Corrections home confinement programs." PS 7320.01 at 1. It does not claim to establish categorial eligibility for home confinement.

Moreover, PS 7320.01 generally uses discretionary, non-binding, language. For example, it provides that an inmate "*may* be considered eligible for direct placement on home confinement" based on a number of discretionary factors, or "*may* be placed on home confinement following CCC placement" if he or she has demonstrated that he or she "no longer requires the level of accountability and services the CCC provides." PS 7320.01 at 7, 8 (emphasis added). The program statement makes clear, however, that "[f]or various reasons, some inmates may never progress to a level of responsibility which would warrant placement on home confinement." Id. at 7. This type of discretionary, non-mandatory language is

9

characteristic of a guidance document or policy statement, not a binding legislative rule. See Cement Kiln Recycling Coalition v. EPA, 493 F.3d 207, 227–28 (D.C. Cir. 2007) (guidance document was not binding where (1) "nothing on the face" of the document suggested it was binding, (2) the document declared that it "d[id] not impose legally binding requirements," and (3) the document stated that regulators retained discretion to rely on its policies "on a case-by-case basis").

Finally, BOP certainly did not treat PS 7320.01 as a binding rule, as it did not invoke its rulemaking authority or publish the program statement in the Federal Register or Code of Federal Regulations. See Sec. Indus. & Fin. Markets Ass'n, 67 F. Supp. 3d at 416.

The Court's conclusion aligns with a substantially similar decision from this district, Kotz v. Lappin, 515 F. Supp. 2d 143 (D.D.C. 2007). In Kotz, an inmate challenged the application of BOP Program Statement 5331.01, which governed when prisoners could earn early release for successful completion of the Residential Drug Abuse Program ("RDAP"). Id. at 150–51. The Kotz court found that Program Statement 5331.01 bore none of the hallmarks of a legislative rule: (1) it "had no effect on the broad discretionary authority given to the BOP to dispense sentence reductions," (2) it was "issued in an informal, internal publication," (3) "the BOP did not explicitly invoke its rulemaking authority," and (4) the new Program Statement "did not amend a prior legislative rule." Id. at 151 (applying the factors set forth in American Mining Congress v. Mine Safety & Health Administration, 995 F.2d 1106, 1112 (D.C. Cir. 1993)). Program Statement 7320.01 has all the same characteristics of the one at issue in Kotz. PS 7320.01 therefore is an interpretive rule to which the APA's notice-and-comment requirements do not apply.

Ayash attempts to avoid this conclusion by arguing that he is not challenging the promulgation of PS 7320.01 itself, but rather the adoption of a *new* policy or practice that purportedly incorporates the requirements of PS 5162.05 into BOP's home confinement decisions. Opp'n at 8 & n.1. This argument suffers from two fatal flaws.

First, because BOP was not required to use notice-and-comment procedures to issue PS 7320.01, it was not required to use those procedures to adopt any amendment to it. See Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 101 (2015) ("Because an agency is not required to use notice-and-comment procedures to issue an initial interpretive rule, it is also not required to use those procedures when it amends or repeals that interpretive rule."); see also Royal v. Tombone, 141 F.3d 596, 600 (5th Cir. 1998) (BOP's guidelines are "promulgated internally and may be altered at will by the BOP").

Second, and perhaps most importantly, the new "policy or practice" about which Ayash complains is not contained in either of these Program Statements—or in any other program statement of which the Court is aware. Indeed, Ayash provides no citation to a written expression of this policy, making it hard for the Court to discern what policy "should have been published for rulemaking" in the first place. Opp'n at 9.[4] To the extent Ayash challenges a new BOP *practice* of denying home confinement under the CARES Act to inmates convicted of an

---

[4] The closest the Court can find to a written version of this policy, which neither party cites, is a memorandum from the U.S. Attorney General about BOP's expanded home confinement authority under the CARES Act. That memorandum explicitly directs BOP to consider "the totality of the circumstances for each individual inmate, the statutory factors for home confinement, and [a] non-exhaustive list of discretionary factors...." including the "inmate's crime of conviction." See Attorney General Memorandum of Mar. 26, 2020, available at https://www.justice.gov/file/1262731/download; see also Collins v. Warden Canaan FPC, No. 21-2878, 2022 WL 2752536, at *2 (3d Cir. July 14, 2022). This memorandum, which explicitly gives BOP discretion to consider a host of factors and describes BOP's authority as "discretionary," is likewise not a legislative rule subject to the APA's notice-and-comment requirements.

offense covered by PS 5162.05, BOP's individual adjudications on inmate placement are categorically immune from APA review under 18 U.S.C. § 3625 ("Inapplicability of the Administrative Procedure Act").  See Wilson-Millan v. U.S. Bureau of Prisons, No. CV 21-1375 (EGS), 2022 WL 1568868, at *3 (D.D.C. May 18, 2022) ("18 U.S.C. § 3625 states unambiguously that the APA's judicial review provisions, 5 U.S.C. §§ 701–706, do not apply to the making of any determination, decision, or order under this subchapter."); Landis v. Moyer, No. 1:19-CV-470, 2022 WL 2677472, at *4 (M.D. Pa. July 11, 2022) ("Congress explicitly provided that 'sections 554 and 555 and 701 through 706 of [the APA] do not apply to the making of any determination, decision, or order' under certain statutes governing federal imprisonment." (quoting 18 U.S.C. § 3625)); see also Brown v. Fed. Bureau of Prisons, 602 F. Supp. 2d 173, 176 (D.D.C. 2009) ("The plaintiff's place of imprisonment, and his transfers to other federal facilities, are governed by 18 U.S.C. § 3621(b), which is specifically exempt from challenge under the APA."); Davis v. Fed. Bureau of Prisons, 535 F. Supp. 2d 42, 44 (D.D.C. 2008) (section 3625 "excludes APA review of BOP determinations regarding placement of inmates in substance abuse treatment").

Accordingly, Ayash has failed allege a violation of the APA.

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss.  A separate Order shall accompany this memorandum opinion.

**SO ORDERED**.

CHRISTOPHER R. COOPER  
United States District Judge

Date: August 17, 2022